IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RUSSELL PERRY II,<br><br>             Plaintiff,<br><br>vs.<br><br>UNITED FIRE GROUP INSURANCE, HEATHER THOMPSON, and ROBERT HUPP,<br><br>             Defendants. | **8:23CV124**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Russell Perry II ("Perry" or "Plaintiff") filed a Complaint, Filing No. 1, and has been given leave to proceed in forma pauperis. Filing No. 5. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). For purposes of this initial review, the Court will consider the affidavit, docketed as a motion in Filing No. 9, as supplemental to the Complaint.

**I. SUMMARY OF COMPLAINT**

Perry filed his Complaint, Filing No. 1, on March 30, 2023, against United Fire Group Insurance ("UFG") and two UFG employees, Heather Thompson ("Thompson") and Robert Hupp ("Hupp"). Perry alleges he visited the Sids & Suds laundromat in Omaha, Nebraska on February 2, 2022, and his clothes caught fire and were damaged while inside one of the dryers. Perry reached out to the Sids & Suds owner, Shirley Fritz ("Fritz"), to obtain her insurance information, but Fritz would not give Plaintiff the information. Perry then contacted the Attorney General's Office, and the investigator, Stephanie Odvarka ("Odvarka"), informed Perry that UFG was Fritz's insurer. While

investigating Perry's case, Odvarka spoke to Fritz who said she cleans the dryers every Tuesday, Thursday, and Sunday and the February 2 incident occurred on a Wednesday. Fritz also said she observed smoke coming from "unit #2" and opened the dryer, removed some articles, extinguished the fire, and the fire department was called. Filing No. 1 at 6. Fritz reported she had not had any issues with unit #2 prior to the fire on February 2, 2022.

Perry filed a claim with UFG, and Thompson, a UFG claim adjuster, reviewed Perry's claim and relied on the information Odvarka obtained. Thompson also contacted Perry during the claim process and asked about his property that was damaged by the dryer "to get a total amount to pay for [Perry's] damages." Id. After Perry told Thompson the items that were damaged, Thompson told Perry "basically how can [he] afford the item that [he] allegedly had in the machine" and "treat[ed Perry] like . . . [he is] a liar and [gave Perry] the worst customer service a U.S. Citizen[] should ever have to go with [sic] the claim adjuster for an Insurance company." Id. UFG denied Perry's claim on March 4, 2022, concluding that their insured was not negligent in her actions. Id. Perry alleges UFG and Thompson also stated they reviewed Perry's previous criminal charges on publicly accessible websites in denying his claim. Id.

Perry appealed the denial of his claim and spoke to Hupp, to whom he explained all that had occurred and reported that he "was discriminated against by one of [Hupp's] employees who handled the case." Id. Perry requested a complete investigation of his claim, and Hupp stated that he would investigate and that "they should have payed [sic] for the clothes and since they did not do the . . . right thing he will and offered me 1200$ [sic] for my damaged clothes." Id.

Plaintiff seeks $5,000,000 in damages "for discrimination from United Fire Group" and wants Thompson "to apologize for the pain she has caused me." *Id.* at 4 (capitalization corrected).

## II.  APPLICABLE STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should

3

construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir. 1980).

### III.  DISCUSSION

Perry alleges that the basis for the Court's jurisdiction in this matter is a federal question based on "[d]iscrimination" and "violation of [his] rights." Filing No. 1 at 3. Liberally construed, Perry's Complaint could be read to raise a claim for relief under 42 U.S.C. § 1981. Thus, the Court must consider whether UFG, Thompson, and Hupp violated Perry's "right-to-contract" for racially discriminatory reasons.

In pertinent part, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The language, "make and enforce contracts," includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981's purpose is to "prohibit discrimination in the 'performance, modification and termination of contracts' and to protect 'the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'" *Williams v. Lindenwood Univ.,* 288 F.3d 349, 355 (8th Cir. 2002) (quoting 42 U.S.C. § 1981(b)).

The Court looks to the elements of a prima facie claim of racial discrimination under section 1981 to analyze whether Perry's Complaint states a plausible claim for relief. The

4

Court considers whether: "(1) he is a member of a racial minority, (2) the defendant intended to discriminate against him on the basis of race, and (3) the discrimination concerned an area enumerated by the statute." *Id.*

Though not alleged in the Complaint, the Court takes judicial notice of other pleadings filed by Perry in this Court in which he alleges he is African American. *See* Filing No. 12 at 29, Case No. 8:23CV121. Thus, the first element is met as Perry is a member of a racial minority. As to the second element, discriminatory intent, there are no allegations suggesting UFG, Thompson, or Hupp intended to discriminate against Perry on the basis of race. Indeed, there are no factual allegations pertaining to race, no facts to suggest any of the Defendants were aware of Perry's race, nor any facts indicating Thompson's or Hupp's race. *See Mears v. Allstate Indem. Co.*, 336 F. Supp. 3d 141 (E.D.N.Y. 2018) (African-American male insured failed to allege sufficient facts to give rise to plausible inference of racially discriminatory intent for insurers' disclaimer of coverage under homeowner's insurance policy regarding theft of insured's personal property, that any of insurers' employees who processed or denied claims harbored discriminatory bias or were aware of insured's race prior to denial of claim, that insurers ever made racially insensitive comments in the course of their dealing, discussed race with insured, or referred to insured's race in any manner, and failed to identify race of any of insurers' employees, as required to support insured's § 1981 race discrimination claim). Rather, Perry alleges that Thompson questioned Perry's ability to afford items that he claimed were damaged in the dryer fire and considered past criminal charges in denying his claim. These facts alone do not suggest UFG and Thompson denied Perry's claim because of his race, particularly in light of the facts alleged regarding Odvarka's

5

investigation and UFG's stated basis for denying the claim due to finding no negligence by its insured, Fritz. See *James v. Scott*, No. 3:07-CV-0419-L, 2007 WL 9760446, at *1 (N.D. Tex. Dec. 28, 2007) ("Plaintiffs allege that Defendant took photographs of damage to the vehicle and the scene of the accident, and that she subsequently denied their insurance claim. While it is clear that Plaintiffs disagree with Defendant's decision to deny their claim, there is absolutely no allegation in the amended complaint of any racial discrimination, and therefore they cannot state any claim upon which relief can be granted.").

Having found that Perry has not alleged facts to suggest discriminatory intent, the Court will not address the third element, interference with the right to make and enforce contracts. See *James v. Scott*, No. 3:07-CV-0419-L, 2007 WL 9760447, at *3 (N.D. Tex. Dec. 12, 2007), *report and recommendation adopted*, No. 3:07-CV-0419-L, 2007 WL 9760446 (N.D. Tex. Dec. 28, 2007) ("[B]ecause the Court finds that Plaintiffs have not adequately pleaded intentional discrimination, it is unnecessary in this case to consider if the denial of an insurance claim filed by a third party is included in the activities enumerated by the statutory language of § 1981."); *but see Shumate v. Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 533 (M.D. Pa. 2009) (noting that "the Courts of Appeal for the Second, Fourth, Seventh and Tenth Circuits have held that third-party beneficiaries possess sufficient contractual rights to assert valid claims under Section 1981").

### IV. OTHER PENDING MOTIONS

On August 1, 2023, Perry filed a renewed request for exemption from payment of the Electronic Public Access Fee ("PACER User Fee")[1] prescribed in accordance with 28

---

[1] PACER is the abbreviation for the Public Access to Court Electronic Records system, https://pacer.uscourts.gov.

U.S.C. § 1914. Filing No. 8. The Court denied Perry's previous request for an exemption on June 1, 2023, Filing No. 7, because Perry has been granted electronic filing access in this case and thus is automatically exempted from the PACER User Fee as set forth in NEGenR 1.3(a)(1)(A)(i). Perry receives a free initial electronic copy of any document filed in this case to which he is entitled to receive service. Given this automatic exemption from the PACER User Fee, the Court again concludes that a discretionary exemption is unnecessary to avoid unreasonable burdens on Perry, particularly where Perry offers no explanation as to why he requires an exemption beyond the automatic exemption to which he is entitled. Accordingly, Perry's Motion for Exemption from PACER Fees is denied.

Also on August 1, 2023, Perry filed a document titled "General Affidavit," which was docketed as a "MOTION Discrimination Victim." Filing No. 9. The document does not ask the Court for any specific relief but rather purports to be an affidavit stating essentially the same facts alleged in the Complaint. Accordingly, the Court will direct the Clerk of Court to terminate the motion event associated with this filing and update the docket text to identify the filing as an affidavit.

## V. CONCLUSION

Perry's Complaint fails to state a plausible claim for relief against any Defendant and is subject to preservice dismissal under 28 U.S.C. § 1915(e)(2). However, on the Court's own motion, Perry will be given 30 days to file an amended complaint that states a plausible claim against Defendants and clearly explains what each Defendant did to him, when Defendant did it, and how Defendant's actions harmed Perry. Perry is advised that any amended complaint he files will supersede his original Complaint.

7

IT IS THEREFORE ORDERED that:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

4. Plaintiff's Motion for Exemption from PACER Fees, Filing No. 8, is denied.

5. The Clerk of Court is directed to terminate the motion event for Filing No. 9 and to update the docket text to identify Filing No. 9 as an "Affidavit."

6. The Clerk of Court is directed to set a pro se case management deadline using the following text: **September 18, 2023**: amended complaint due.

7. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 17th day of August, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

8